UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA ANNAMARIA SERBAN,<br><br>Petitioner,<br><br>v.<br><br>MOISES BECERRA, et al.,<br><br>Respondents. | No. 1:25-cv-02065-DAD-EFB (HC)<br><br>ORDER DENYING PETITIONER'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER<br><br>(Doc. No. 2) |

This matter is before the court on petitioner's *ex parte* motion for temporary restraining order filed on December 30, 2025. (Doc. No. 2.) For the reasons explained below, the court will deny petitioner's motion.

**BACKGROUND**

On December 30, 2025, petitioner Andrea Annamaria Serban filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 challenging her detention by the United States Immigration and Customs Enforcement ("ICE"). (Doc. No. 1.) Although not altogether clear, it appears petitioner asserts the following claims in her petition: (1) unconstitutional prolonged civil detention in violation of the Fifth Amendment; (2) retaliatory and arbitrary detention; (3) failure to consider that she was a victim of human trafficking and juvenile entry into this country; and (4) deliberate indifference to her serious medical needs. (Doc. No. 1 at ¶¶ 40–48.)

1

In support of her motion for temporary restraining order, petitioner has alleged the following facts unsupported by exhibits or declarations.

Petitioner entered the United States when she was fifteen years old. (*Id.* at ¶ 7.) Petitioner was subjected to "human trafficking" by her family and ex-husband, and suffered physical, economic, and psychological coercion, as well as forced engagement in criminal activity. (*Id.* at ¶¶ 11–13.) Petitioner was ordered removed from the United States *in absentia* on July 2, 2022. (*Id.* at ¶ 16.) Her removal proceedings were subsequently re-opened, and she currently has a master calendar hearing in immigration court scheduled for January 14, 2026. (*Id.* at ¶¶ 18–19.) Petitioner was detained on October 23, 2025, when her ex-husband and a bail bondsman "falsely represented that Petitioner was subject to arrest" and transported her to an ICE facility in Los Angeles where she was taken into custody. (*Id.* at ¶¶ 22–24.)

Since her recent detention, petitioner has experienced left-sided chest pain, numbness in her left arm, hand, and fingers, and "persistent neurological symptoms." (*Id.* at ¶ 29.) An EKG was performed, with one abnormal result, and no other follow-up medical care or treatment has been provided to her. (*Id.* at ¶ 30–31.) Finally, petitioner also alleges that her ex-husband has taken her three minor U.S. citizen children to Romania, and that her detention is preventing her from taking the necessary steps to recover her children. (*Id.* at ¶¶ 34–38.)

In opposing petitioner's pending motion, respondents present evidence of the following facts. Petitioner is a native of Italy and a citizen of Romania. (Doc. No. 8-2 at 2.) She entered the United States on or about September 29, 2016. (*Id.* at 3.) On September 8, 2020, petitioner, through counsel, conceded her inadmissibility to the United States pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I). (*Id.* at 7, 11.) According to criminal records, between February 9, 2024, and March 11, 2025, petitioner suffered convictions in California state courts for shoplifting, burglary, and theft. (*Id.* at 4, 24–28.) Petitioner's petition in immigration court to reopen her removal proceedings was granted on November 26, 2025. (*Id.* at 33.) In the order reopening those proceedings, the immigration judge ("IJ") credited petitioner's sworn statement that she had moved in with her former partner at the age of sixteen, experienced physical abuse, and was

/////

2

1   encouraged to beg and steal by her partner's family, who threatened to take her children away if
2   she told anyone about her domestic situation. (*Id.* at 34.)
3       On December 29, 2025, petitioner filed the pending motion for temporary restraining
4   order (Doc. No. 2.) In that motion, petitioner requests that the court order her immediate release
5   from ICE custody and enjoin her re-detention absent prior notice to the court and an opportunity
6   to be heard. (Doc. No. 2 at 6.) Petitioner also confusingly asks the court to order that she receive
7   a prompt medical evaluation upon her release.[1] (*Id.*) On December 30, 2025, the court directed
8   petitioner's counsel to serve respondents with a copy of the petition, the motion for temporary
9   restraining order, and accompanying papers, and set a briefing schedule as to the pending motion.
10  (Doc. No. 4.) On January 5, 2026, respondents filed their opposition. (Doc. No. 8.) Petitioner
11  filed her reply on January 6, 2026. (Doc. No. 9.)[2]

## LEGAL STANDARD

13      The standard governing the issuing of a temporary restraining order is "substantially
14  identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v.*
15  *John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for
16  preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the
17  merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the
18  balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans,*
19  *Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council,*
20  *Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th
21  Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just
22  possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los*

---

[1] Because the court will not grant the pending motion requesting an order that she be immediately released from custody, this request will be denied as moot.

[2] The caption of petitioner's pleadings identify law student Gina Herrerra as appearing as counsel for petitioner, along with lead counsel Robert Cummings, pursuant to 8 C.F.R. 1292.1(a)(2). That regulation governs law student appearances in the Executive Office for Immigration Review. Petitioner's lead counsel is cautioned to ensure that any appearance by a law student in this action is made in accordance with Eastern District of California Local Rule 181.

1    *Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  A petitioner seeking a preliminary injunction must

2    make a showing on all four of these prongs.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

3    1135 (9th Cir. 2011).  The Ninth Circuit has also held that "[a] preliminary injunction is

4    appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were

5    raised and the balance of hardships tips sharply in the plaintiff's favor."  *Id.* at 1134–35 (citation

6    omitted).  The party seeking the injunction bears the burden of proving these elements.  *Klein v.*

7    *City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co.*

8    *v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than

9    merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate*

10   immediate threatened injury as a prerequisite to preliminary injunctive relief.").  Finally, an

11   injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the

12   plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.

13       The likelihood of success on the merits is the most important *Winter* factor.  *See Disney*

14   *Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).  Petitioner bears the burden of

15   demonstrating that she is likely to succeed on the merits of her claims or, at the very least, that

16   "serious questions going to the merits were raised."  *All. for Wild Rockies*, 632 F.3d at 1131.

## DISCUSSION

**A.    Likelihood of Success on the Merits**

19       Again, although not clear it appears that petitioner argues she is likely to prevail on her

20   claim that her current detention violates due process because (1) her detention is indefinite;

21   (2) her re-opened removal proceedings alter the detention analysis; (3) her detention on October

22   23, 2025, less than three months ago, was tainted by the retaliatory involvement of her ex-

23   husband in that detention;[3] (4) her criminal convictions were the result of human "trafficking and

24   coercion"; and (5) respondents' deliberate indifference to her medical needs requires her

---

[3] A retaliatory arrest claim may be cognizable when brought against a government agency, but here petitioner does not allege that her ex-husband was acting on behalf of the government. Therefore, petitioner is unlikely to succeed on the merits of this claim. *Cf. Bello-Reyes v. Gaynor*, 985 F.3d 696 (9th Cir. 2021) (where noncitizen claimed his detention was an unconstitutional retaliation by ICE against his protected speech).

1   immediate release.⁴  (Doc. No. 2 at 9–10.)  Respondents argue that petitioner has not established
2   that she is likely to succeed on the merits of her claim because she is subject to mandatory
3   detention pursuant to 8 U.S.C. § 1226(c).  (Doc. No. 8 at 3.)  In reply, petitioner argues that
4   mandatory detention under § 1226(c) does not foreclose an as-applied due process challenge to
5   prolonged immigration detention such as the one she is asserting here.  (Doc. No. 9 at 2.).

6   Section 1226(c) mandates detention for a noncitizen who, as relevant here, is found to be
7   inadmissible under § 1182(a)(7) and has been convicted of committing acts constituting burglary
8   or theft.  Petitioner is charged by way of a notice to appear with her inadmissibility into the
9   United States pursuant to § 1182(a)(7) and has apparently admitted her inadmissibility under that
10  provision through counsel on September 8, 2020.  (Doc. No. 8-2 at 7, 11.)  Additionally,
11  according to her criminal record, petitioner has suffered convictions for burglary and theft.  (Doc.
12  No. 8-2 at 4, 24–28.)  Finally, petitioner does not dispute that she is subject to mandatory
13  detention pursuant to § 1226(c), but rather asserts she is making an as-applied due process
14  challenge to her continued detention.  (Doc. No. 9 at 2.)

15  "[Section] 1226(c) mandates detention of any alien falling within its scope and that
16  detention may end prior to the conclusion of removal proceedings 'only if' the alien is released
17  for witness-protection purposes." *Jennings v. Rodriguez*, 583 U.S. 281, 305-06 (2018).  "[U]nder
18  Subsection C, which applies to noncitizens convicted of certain crimes, a noncitizen is not
19  statutorily entitled to a bond hearing." *Avilez v. Garland*, 69 F.4th 525, 530 (9th Cir. 2023)
20  (holding that after *Jennings*, § 1226(c) extends to the judicial phase of removal proceedings,
21  overruling previous Ninth Circuit precedent that detention authority shifted to § 1226(a) after the
22  administrative stage of removal proceedings).

---

⁴ Petitioner argues that the inadequacy of the medical care she is receiving requires her emergency release.  (Doc. No. 2 at 10.)  However, petitioner has not presented the court with any evidence supporting this claim nor has she advanced any argument regarding whether the government has violated its duty to provide her conditions of reasonable health and safety. *See Zepeda Rivas v. Jennings*, 845 F. App'x 530, 534 (9th Cir. 2021) ("The Fifth Amendment requires the government to provide conditions of reasonable health and safety to people in its custody.")  The court therefore finds that petitioner has failed to establish that she is likely to succeed on the merits of this claim as currently presented.

Nonetheless, as-applied constitutional challenges to the application of § 1226(c) have not been foreclosed. *Nielsen v. Preap*, 586 U.S. 392, 420 (2019) ("Our decision today on the meaning of that statutory provision does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it."); *see also Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024) (reviewing an IJ's dangerousness determination following a bond hearing, where the noncitizen was detained pursuant § 1226(c) and the district court had previously ordered a bond hearing pursuant to the Due Process Clause.)

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). When considering due process challenges in the immigration context, courts may apply the *Mathews v. Eldridge*, 424 U.S. 319 (1976) test. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) (assuming but not deciding that the *Mathews* test applies in the context of prolonged detention under § 1226(a)).[5]

---

[5] Absent controlling authority as to the standard governing as-applied due process challenges to prolonged detention in this context, district courts in this circuit have taken various approaches. Some have adopted a bright line rule that detention becomes prolonged after six months. *See Rodriguez v. Nielsen*, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (noting the lack of controlling authority). Others have applied the *Mathews* test. *See Perera v. Jennings, et al.*, No. 21-cv-04136-BLF, 2021 WL 2400981, at *4 (N.D. Cal. June 11, 2021) (applying *Mathews* in the context of § 1226(c)); *Idiev v. Warden of the Golden State Annex Det. Facility*, No. 1:25-cv-01030-SKO (HC), 2025 WL 3089349, at *5 (E.D. Cal. Nov. 5, 2025) (applying *Mathews* in the context of § 1225(b)). Other district courts have applied a multi-factor test which considers the length of detention in light of the petitioner's criminal sentence, the nature of the crimes, the conditions of detention, the likely duration of future detention, delays in the removal proceedings caused by the detainee, delays caused by the government, and the likelihood that proceedings will result in a final order of removal. *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118–20 (W.D. Wash. 2019) (applying this test in the context of § 1225(b)); *Martinez v. Clark*, No. 18-cv-01669-RAJ-MAT, 2019 WL 5968089, at *9–10 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (applying the test in the context of § 1226(c)). Finally, some courts have applied the *Lopez* test, balancing the length of detention, the likely duration of future detention, and the delays in the removal proceedings. *See Lopez v. Garland*, No. 22-cv-531-SAB (HC), 2022 WL 4586413, at *6 (E.D. Cal. Sept. 29, 2022) (applying this test in the § 1226(c) context); *Sanchez-Rivera v. Matuszewski*, No. 22-cv-1357-MMA-JLB, 2023 WL 139801, at *6 (S.D. Cal. Jan. 9, 2023) (applying the *Lopez* test in the context of § 1226(c) with explanation). Because the Ninth Circuit has previously applied the *Mathews* test in the context of prolonged detention and considered many of the factors listed in the other tests while doing so, this court applies the *Mathews* test here. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

> Under *Mathews*, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* at 1207 (internal citations omitted).

First, the court evaluates the strength of petitioner's private interest. "[A]n individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'" *Rodriguez Diaz*, 53 F.4th at 1207 (assuming the petitioner's detention qualified as prolonged because it was longer than six months) (quoting *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). When determining the strength of petitioner's showing under the first *Mathews* factor, the court must also consider "the process [she] received during [her detention], the further process that was available to [her], and the fact that [her] detention was prolonged due to [her] decision to challenge her removal order." *Rodriguez Diaz*, 53 F.4th at 1207–08. Here, petitioner has not received any hearing addressing her suitability for release since her detention on October 23, 2025. (Doc. Nos. 1, 8.) Moreover, petitioner does not at this time have further statutory process available to her. Unlike the petitioner in *Rodriguez Diaz*, who was detained pursuant to § 1226(a), with a statutory right to a substantive bond hearing, and the opportunity to request additional hearings based upon a change in circumstances, petitioner is subject to § 1226(c). She therefore does not have a statutory right to a bond hearing.[6] *Id.*

Nevertheless, the court finds that consideration of the final *Rodriguez Diaz* factor weighs significantly against petitioner. Petitioner's first master calendar hearing before an IJ is

---

[6] Petitioner requests only her immediate release from custody. (Doc. No. 2 at 6.) The court conducts its due process analysis in the context of whether a lesser procedural remedy, namely a bond hearing, is required. Because the court will conclude that consideration of the *Mathews* factors establishes that petitioner has not made a showing of likelihood of success on the merits regarding her request for a bond hearing, the court will also conclude that she has failed to show a likelihood of success on the merits as to her claim that she is entitled to an order requiring her immediate release.

7

1    scheduled for January 14, 2026, less than two months after her removal proceedings were
2    reopened on November 26, 2025, and less than three months after her detention on October 23,
3    2025. (Doc. Nos. 2 at 3; 8-1 at ¶ 10; 8-2 at 33.) The Supreme Court has noted that "the detention
4    at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases . . . and
5    about five months in the minority of cases in which the alien chooses to appeal." *Demore v. Kim*,
6    538 U.S. 510, 530 (2003) (holding the respondent's six-month detention of the petitioner did not
7    violate due process in part because the delay was a result of petitioner's own requests).
8    Moreover, here, it is petitioner who made the litigation choice to seek to reopen her removal
9    proceedings, consequently prolonging them. *See Rodriguez Diaz*, 53 F.4th at 1207 ("We also
10   cannot overlook that most of the period of Rodriguez Diaz's detention arose from the fact that he
11   chose to challenge before the BIA and later this Court the IJ's denial of immigration relief.")
12   While petitioner has a private interest in freedom from prolonged detention, the court's
13   consideration of the *Rodriguez Diaz* factors weighs against petitioner's showing under the first
14   *Mathews* factor. Accordingly, the court concludes that consideration of the first *Mathews* factor
15   is at best neutral in determining whether petitioner is entitled to relief by way of a temporary
16   restraining order.

17        The second *Mathews* factor, the risk of erroneous deprivation of her right to be free from
18   prolonged detention, is significant where no process is afforded to petitioner to determine whether
19   she is in fact a danger to the community or a flight risk. *Cf. Idiev v. Warden of the Golden State*
20   *Annex Det. Facility*, No. 1:25-cv-01030-SKO (HC), 2025 WL 3089349, at *5 (E.D. Cal. Nov. 5,
21   2025) (finding the risk of erroneous deprivation was high where the petitioner was detained for
22   eighteen months without a bond hearing). "The probable value of additional procedural
23   safeguards, i.e., a bond hearing, is high, because Respondents have provided virtually no
24   procedural safeguards at all." *Idiev*, 2025 WL 3089349, at *5. Nonetheless, it is not for this court
25   to determine whether petitioner is entitled to bond, rather this court is to determine simply
26   whether additional process would lower the risk of an erroneous deprivation of the right to be free
27   from prolonged detention. *See Pham v. Becerra*, No. 23-cv-01288-CRB, 2023 WL 2744397, at
28   *6 (N.D. Cal. Mar. 31, 2023) (noting it is not for the court to decide the ultimate question of

8

1  whether the petitioner should be granted bond). A bond hearing before a neutral adjudicator
2  could arguably mitigate the risk of erroneous deprivation where, as here, petitioner has not
3  received a hearing regarding the necessity of her detention. The court's consideration of this
4  factor weighs somewhat in favor of the granting of preliminary relief.

5        The court next considers the third *Mathews* factor, the government's interest. "The
6  Supreme Court has . . . specifically instructed that in a *Mathews* analysis, we 'must weigh heavily
7  in the balance that control over matters of immigration is a sovereign prerogative, largely within
8  the control of the executive and the legislature." *Rodriguez Diaz*, 53 F.4th at 1208 (quoting
9  *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)). The government has an interest in "protecting the
10 public" from noncitizens who have been determined to be dangerous, as well as ensuring
11 successful execution of removal orders through detention of removable noncitizens. *Id.* at 1208
12 (citing *Demore*, 538 U.S. at 515, 528.) Thus, here the government's interest weighs heavily
13 against the granting of petitioner's request for preliminary relief.

14       Upon balancing the *Mathews* factors, the court finds that petitioner has not established a
15 likelihood of success on the merits of her as-applied Due Process challenge to her detention.
16 Based on the record before it, the court concludes that petitioner has not demonstrated a weighty
17 private interest, and while a post-detention bond hearing may possibly limit the risk of erroneous
18 deprivation, that possibility does not outweigh the government's interest in control over
19 immigration matters. Because petitioner has not carried her burden of establishing that she is
20 likely to succeed on the merits of her claims, the court need not consider the other *Winter* factors.
21 *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) ("Likelihood of success on the merits is 'the
22 most important' factor; if a movant fails to meet this 'threshold inquiry,' we need not consider the
23 other factors.") (quoting *Disney*, 869 F.3d at 856).

24 /////
25 /////
26 /////
27 /////
28 /////

9

**CONCLUSION**

For the reasons above,

1. Petitioner's motion for a temporary restraining order (Doc. No. 2) is DENIED; and

2. The parties are directed to meet and confer and, if possible, submit a joint proposed briefing schedule and hearing date with respect to any motion for a preliminary injunction no later than fourteen (14) days from the date of entry of this order.

IT IS SO ORDERED.

Dated: **January 12, 2026**

*Dale A. Drozd*
DALE A. DROZD
UNITED STATES DISTRICT JUDGE